IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,725

HOWARD JOHNSON III,
*Appellant*,

v.

U.S. FOOD SERVICE,
and
AMERICAN ZURICH INSURANCE CO.,
*Appellees.*

SYLLABUS BY THE COURT

1.

If a court can genuinely, reasonably, plausibly, or fairly interpret and construe statutory language consistent with legislative intent in a manner that also preserves it from impermissibly encroaching on constitutional limits, the court must do so.

2.

The reference in K.S.A. 2019 Supp. 44-510e(a)(2)(B) to the Sixth Edition of the American Medical Association Guides does not render the statute unconstitutional under section 18 of the Kansas Constitution Bill of Rights because it is merely a guide which does not alter the requirement that any impairment rating be "established by competent medical evidence."

Review of the judgment of the Court of Appeals in 56 Kan. App. 2d 232, 427 P.3d 996 (2018). Appeal from the Workers Compensation Board. Opinion filed January 8, 2021. Judgment of the Court of Appeals reversing the Workers Compensation Board is reversed. Decision of the Workers Compensation Board is affirmed.

1

*Mark E. Kolich*, of Lenexa, argued the cause and was on the briefs for appellant.

*Michelle Daum Haskins*, of, Lee's Summit, Missouri, argued the cause, and was on the briefs for appellees.

*Dwight R. Carswell*, assistant solicitor general, argued the cause, and *Bryan C. Clark*, assistant solicitor general, *Brant M. Laue*, deputy solicitor general, *Toby Crouse*, solicitor general, *Jeffrey A. Chanay*, chief deputy attorney general, and *Derek Schmidt,* attorney general, were with him on the briefs for intervenor State of Kansas.

*Keith L. Mark*, of Mark & Burkhead, of Mission, was on the brief for amici curiae International Brotherhood of Teamsters, Communication Workers of America, International Association of Fire Fighters, International Union of Bricklayers and Allied Craft Workers, International Brotherhood of Electrical Workers Local 412, and Tri-County Labor Council of Eastern Kansas Laborers Local 1290.

*Jan L. Fisher*, of McCullough, Wareheim & LaBunker, of Topeka, was on the brief for amici curiae Kansas AFL-CIO, Working Kansas Alliance, and Kansas Trial Lawyers Association.

*Miriam E. C. Bailey*, of Polsinelli PC, of Kansas City, Missouri, was on the brief for amicus curiae Kansas Chamber of Commerce.

*Lyndon W. Vix*, *William L. Townsley III*, and *Audrey D. Koehler*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, were on the brief for amicus curiae American Property Casualty Insurance Association.

The opinion of the court was delivered by

STEGALL, J.:  Howard Johnson III was injured while working for U.S. Food Service. Johnson filed for workers compensation benefits. Dr. Harold Hess rated Johnson's permanent partial impairment using the Sixth Edition of the American Medical

2

Association Guides (Sixth Edition) as adopted by the Kansas Workers Compensation Act. See K.S.A. 2019 Supp. 44-510e(a)(2)(B). Johnson appealed his permanent partial impairment rating arguing that K.S.A. 2015 Supp. 44-510e(a)(2)(B)'s use of the Sixth Edition was unconstitutional on its face because it resulted in lower impairment ratings thus depriving workers of their right to a remedy under section 18 of the Kansas Constitution's Bill of Rights. The Court of Appeals agreed, holding that K.S.A. 2015 Supp. 44-510e(a)(2)(B) was unconstitutional on its face.

We reverse. Applying the rule of constitutional avoidance, we construe ambiguous statutory language to avoid the constitutional question. Because the language of K.S.A. 2019 Supp. 44-510e(a)(2)(B) referencing the Sixth Edition can reasonably be interpreted as a guideline rather than a mandate, we find K.S.A. 2019 Supp. 44-510e(a)(2)(B) constitutional.

FACTUAL AND PROCEDURAL BACKGROUND

Johnson injured his cervical spine by trying to open a door that was frozen shut on a trailer while working for U.S. Food Service. Dr. Hess inspected Johnson's injury and diagnosed Johnson with cervical myeloradiculopathy. Dr. Hess found that Johnson had herniated discs at the C5-C6 and C6-C7 level that was affecting spinal cord function. Because of the severity of the injuries, Dr. Hess recommended immediate surgery. Johnson then filed a claim for workers compensation benefits.

A few months later, Dr. Hess performed an anterior cervical discectomy and fusion at the C5-C6 and C6-C7 level. The disc material at C5-C6 and C6-C7 was removed and replaced with cadaveric bone to "create a fusion across the two vertebral bodies, across the disc space." A metal plate was also screwed into the vertebrae to act as a temporary stabilizer. In his deposition, Dr. Hess explained that the metal plate would

3

only need to be removed in two situations. First, the metal plate would need to be removed if Johnson developed an infection—but that was unlikely given the amount of time that had passed since the surgery. Second, the metal plate would need to be removed if Johnson ever needed surgery on an adjacent level. Dr. Hess stated that Johnson's surgery put him at risk for developing problems at adjacent vertebral levels—mainly that discs above or below the fusion site would degenerate. Dr. Hess estimated that there is a "20 to 30 percent possibility of breakdown of an adjacent disc over ten years."

Johnson received temporary total disability compensation from October 19, 2015 to April 14, 2016 in the sum total of $15,511.42. Johnson returned to work as a delivery driver in April 2016 before he reached maximum medical improvement. But Johnson's injury required him to make modifications to his work. As a result, it took Johnson longer to complete tasks. Dr. Hess monitored Johnson's recovery and fully released him from care in July 2016 because he was at maximum medical improvement. Using the Sixth Edition, Dr. Hess rated Johnson as 6% of the whole person impaired.

Johnson appealed several issues to an administrative law judge (ALJ), including whether the Kansas Legislature's inclusion of the Sixth Edition of the American Medical Association Guides (AMA Guides) is unconstitutional. According to Johnson, the Sixth Edition resulted in lower impairment ratings thus depriving workers of the adequate substitute remedy required under section 18 of the Kansas Constitution Bill of Rights. The ALJ, however, refused to address Johnson's constitutional issue because administrative courts are not courts established by article 3 of the Kansas Constitution and thus have no authority to hold an act of the Kansas Legislature unconstitutional. Johnson then appealed the ALJ's order to the Workers Compensation Board. Again, the Board refused to address Johnson's constitutional claim because the Board is not a court established by article 3 of the Kansas Constitution and thus has no authority to hold an act by the Kansas Legislature unconstitutional.

Johnson appealed the Board's ruling to the Court of Appeals. There, Johnson asked the panel to determine whether the 2013 amendment to K.S.A. 44-510e discussing the use of the Sixth Edition of the AMA Guides to measure permanent impairment for work injuries violates section 18 of the Kansas Constitution's Bill of Rights. The Court of Appeals agreed with Johnson, holding that with "the adoption of the Sixth Edition of the AMA Guides, the Act has been emasculated to the point that it is no longer an adequate quid pro quo for injured workers who suffer a permanent impairment as a result of an injury occurring on or after January 1, 2015." *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, 257, 427 P.3d 996 (2018). The panel remanded the case to the ALJ with instructions to conduct further proceedings on Johnson's claim using the Fourth Edition of the AMA Guides.

U.S. Food Service and the State now appeal this ruling raising the same issue before this court.

ANALYSIS

Our analysis differs from that of the Court of Appeals. Before addressing the constitutional issue raised, we must first know what the statute says. We exercise plenary review over statutory meaning. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019) ("Statutory interpretation presents a question of law subject to de novo review.").

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *In re Joint Application of Westar Energy & Kansas Gas and Electric Co.*, 311 Kan. 320, 328, 460 P.3d 821 (2020). In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. 311 Kan. at 328. When a statute is plain and unambiguous,

an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. See *In re Westar Energy*, 311 Kan. at 328.

Under the 2013 amendment to the Kansas Workers Compensation Act:

"The extent of permanent partial general disability shall be the percentage of functional impairment the employee sustained on account of the injury as established by competent medical evidence and based on the fourth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein, until January 1, 2015, but for injuries occurring on and after January 1, 2015, based on the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein." L. 2013, ch. 104 § 9; K.S.A. 2019 Supp. 44-510e(a)(2)(B).

The Court of Appeals ruled the language requiring that impairment ratings for injuries occurring on and after January 1, 2015, be based on the Sixth Edition was unconstitutional. Importantly, on the way to this conclusion, the panel interpreted the statute as doing away with the requirement that "'the percentage of functional impairment the employee sustained on account of the injury'" must be "'established by competent medical evidence.'" K.S.A. 2015 Supp. 44-510e(a)(2)(B). The panel reasoned that while "previous versions of the Guides deferred to the physician's discretion in providing an impairment rating" and "left room for adjustments needed to meet the evolving demands of medical science," the "statute no longer refers to 'competent medical evidence' when dealing with injuries after January 1, 2015" and thus, medical "discretion has been removed." *Johnson*, 56 Kan. App. 2d at 254.

6

But the panel's reading of the statute ignores another plausible interpretation. It is equally reasonable to interpret the legislative choice of the language "based on the sixth edition" as supplanting only the parallel phrase applicable to injuries prior to 2015—i.e., "based on the fourth edition." This would leave intact the primary substantive effect of the statute which is to define the extent of the injury to be a percentage of functional impairment "as established by competent medical evidence."

The latter interpretation gains sense and support when considering the Legislature's choice of the words "based on" in the statute. Using the phrase "based on" typically signifies a guideline rather than a mandate. For example, in *Hughes v. United States*, 584 U.S. __, 138 S. Ct. 1765, 1775, 201 L. Ed. 2d 72 (2018), the Court held that a sentence is "based on" the advisory federal sentencing guidelines when the guidelines range is a basis for the court's exercise of discretion. The Court reached its decision by defining "base":

> "To 'base' means '[t]o make, form, or serve as a foundation for,' or '[t]o use (something) as the thing from which something else is developed.' Black's Law Dictionary 180 (10th ed. 2014). Likewise, a 'base' is '[t]he starting point or foundational part of something,' or '[a] point, part, line, or quantity from which a reckoning or conclusion proceeds.'" 138 S. Ct. at 1775.

The same is true here. The use of the phrase "based on" indicates the Legislature intended the Sixth Edition to serve as a standard starting point for the more important and decisive "competent medical evidence." That is, "the application of a standard, while setting the legal parameters of any possible final resolution, leaves work to be done. See Sunstein, *Problems with Rules*, 83 Cal. L. Rev. 953, 959-68 (1995) (in depth analysis of the 'continuum from rules to untrammeled discretion, with factors, guidelines, and standards falling in between')." *Apodaca v. Willmore*, 306 Kan. 103, 136, 392 P.3d 529 (2017) (Stegall, J., dissenting).

Given these two competing interpretations, we must next consider the rule of constitutional avoidance. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 367, 361 P.3d 504 (2015) (defining the rule of constitutional avoidance as the court's "duty to construe a statute as constitutionally valid when it is faced with more than one reasonable interpretation"). In other words, "if a court can *genuinely*, *reasonably*, *plausibly*, *or fairly* interpret and construe statutory language *consistent with legislative intent* in a manner that also preserves it from impermissibly encroaching on constitutional limits, the court must do so." *State v. Ryce*, 303 Kan. 899, 966, 368 P.3d 342 (2016) (Stegall, J., dissenting).

Of course, we cannot invoke this rule to impose an interpretation that changes the meaning of unambiguous language or conflicts with clear legislative intent. See *State v. Marsh*, 278 Kan. 520, 539, 102 P.3d 445 (2004) ("the avoidance doctrine is applied appropriately *only* when a statute is ambiguous, vague, or overbroad"), *rev'd on other grounds* 548 U.S. 163, 126 S. Ct. 2516, 165 L. Ed. 2d 429 (2006). But the competing interpretations of the language added in 2013 make the rule of constitutional avoidance apropos in this case.

Thus, we hold that the language added in 2013 does not change the essential legal standard for determining functional impairment. K.S.A. 2019 Supp. 44-510e(a)(2)(B) still requires that ratings be "established by competent medical evidence." The 2013 amendments merely reflect an update to the most recent set of guidelines—which serve as a starting point for any medical opinion. K.S.A. 2019 Supp. 44-510e(a)(2)(B) has never dictated that the functional impairment is set by guides. This has not changed. The key fact—percentage of functional impairment—must always be proved by competent medical evidence.

Aside from an updated starting point, the legal substance of K.S.A. 2019 Supp. 44-510e(a)(2)(B) remains the same as it has been. Given this, the challenge under section 18 of the Kansas Constitution Bill of Rights necessarily fails.

The judgment of the Court of Appeals reversing the Workers Compensation Board is reversed, and the decision of the Workers Compensation Board is affirmed.

BEIER and BILES, JJ., not participating.

MICHAEL E. WARD, Senior Judge, assigned.[1]

DAVID W. HAUBER, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 117,725 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:** District Judge Hauber was appointed to hear case No. 117,725 vice Justice Biles under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.